Filed 10/16/14  P. v. Wu CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NAN WU,<br><br>    Defendant and Appellant. | H039303<br>(Santa Clara County<br>Super. Ct. No. CC814105) |

Defendant Nan Wu appeals from a judgment of conviction entered after she pleaded no contest to two counts of grand theft (Pen. Code, §§ 484, 487, subd. (a)).[1]  As to the first count, she also admitted that she took property exceeding $200,000 (§ 12022.6, subd. (a)) and that probation would not be granted when the theft exceeded $100,000 (§ 1203.045).  The trial court sentenced defendant to five years and eight months in county jail.  The trial court also ordered defendant to pay $245,000 in restitution to the victim.[2]  On appeal, defendant contends:  (1) the trial court violated the plea agreement when it held the restitution hearing after the sentencing hearing; (2) the no-contact order violated defendant's right to due process; and (3) there was insufficient

---

[1]    All further statutory references are to the Penal Code.

[2]    The trial court found that the victim's total loss was $355,000, and defendant had already paid $110,000 to her.

evidence of her ability to pay the presentence investigation report fee. The judgment is reversed and remanded for the trial court to make a determination of defendant's ability to pay the presentence investigation report fee. The trial court is also directed to strike the no-contact order.

## I. Statement of Facts[3]

In December 2005, Winnie Liu agreed to invest in defendant's company. Liu wired $100,000 to defendant's account the following month. Defendant gave Liu a promissory note in which she agreed to repay the investment plus 40 percent interest by June 6, 2006. In April 2006, defendant asked Liu for an additional $100,000 and verbally promised to repay the investment within two or three weeks. Liu withdrew $100,000 from her home equity line of credit (HELOC) and gave defendant three cashier's checks totaling $100,000.

Between May 2 and May 30, 2006, defendant gave Liu six checks totaling $232,620.88. Liu attempted several times to cash the checks, but she was unable to obtain the funds.

On July 11, 2006, defendant called Liu and stated that she had deposited the funds for the second payment of $100,000. A few hours later, she called Liu and told her that the bookkeeper had made a mistake and deposited an extra $95,000 into Liu's account. Defendant asked Liu to give the $95,000 back to her by cashier's check. After Liu confirmed that two deposits totaling $195,000 were in her account, she made a cashier's check payable to defendant for $93,000 and deposited $2,000 in cash in defendant's account. However, defendant's checks bounced and Liu's account was overdrawn. On July 20, 2006, defendant again deposited checks into Liu's account, but they also bounced. This pattern reoccurred six times, thereby ruining Liu's HELOC account.

---

[3] The statement of facts is taken from the probation report.

2

On September 28, 2006, defendant asked Liu to give her one last chance. Defendant gave Liu a promissory note indicating that she would pay her $295,000 in installments between October 4 and October 10, 2006. When Liu did not receive any money from defendant by October 8, 2006, she filed a police report.

On April 15, 2008, an investigator for Wells Fargo Bank informed the police that defendant made 10 deposits totaling $9,834.26 into her Wells Fargo account. Defendant then withdrew the money from her account before the checks were returned unpaid for insufficient funds. Wells Fargo Bank incurred a loss of $9,830.29.

## II. Discussion

### A. Plea Agreement

Defendant contends that the trial court violated the plea agreement when it held the restitution hearing after the sentencing hearing. She further contends that this violation denied her due process and the appropriate remedy is specific enforcement of the plea agreement.

### 1. Background

At the plea hearing on June 29, 2012, the trial court stated: " . . . the resolution of your case is as follows: You will plead to both counts of the Information. Count 1 is a felony charge of grand theft, and there's an allegation that the amount of the theft exceeds $100,000, and also count 2, which is a felony charge of grand theft. [¶] In exchange for your pleas and admissions, there will be no promise regarding the sentence, but we're going to have a restitution hearing which will probably take place sometime in September. And at that time, the Court will determine what the restitution is and, also, after that, we'll determine what the sentence is going to be. [¶] Do you understand the resolution of the case?" Defendant responded, "Yes."

The trial court later asked appellant whether she admitted the allegation that she had taken property with a value exceeding $200,000 as well as the allegation that she had

3

taken property with a value exceeding $100,000. Defense counsel then stated that "there's an ambiguity about how much is owed and that's the reason we're going to have a restitution hearing. Can that be reserved?" The prosecutor stated, "I would like to have the 12022.6 allegation be admitted."[4] The prosecutor acknowledged that defendant had paid some restitution to Liu, but that payment did not change the fact that Liu had lost money due to defendant's conduct. The trial court responded, "So admitting it, and if the Court determines that it's less than . . . 200,000," "then I would strike -- I would entertain a motion to strike [the] admission." Defense counsel responded, "That's reasonable." The trial court then stated: "All right. Ms. Wu, what we're going to do is, as I understand it, is that you will admit these two allegations, and then when the Court does the restitution hearing, if the amount of the restitution as determined by the Court is less than one or both of these allegations, then the People would not be objecting to a dismissal of the -- or striking of the admission to the allegation." Defendant stated that she understood and admitted the allegations that she took property exceeding $200,000 (§ 12022.6, subd. (a)) and that probation would not be granted when the theft exceeded $100,000 (§ 1203.045).[5] After taking the plea, the trial court set the matter for a restitution hearing. The trial court also advised defendant, "Now, ordinarily, if the Court

---

[4]      Section 12022.6, subdivision (a) provides in relevant part: "(a) When any person takes . . . property in the commission . . . of a felony, with the intent to cause that taking, . . . the court shall impose an additional term as follows: [¶] . . . [¶] (2) If the loss exceeds two hundred thousand dollars ($200,000), the court, in addition and consecutive to the punishment prescribed for the felony . . . of which the defendant has been convicted, shall impose an additional term of two years."

[5]      Section 1203.045, subdivision (a) provides: "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any person convicted of a crime of theft of an amount exceeding one hundred thousand dollars ($100,000)."

doesn't go along with the plea bargain agreement, then you would have the right to take back your plea."

After several continuances, the restitution and sentencing hearing was scheduled for December 7, 2012. At that time, defense counsel requested another continuance and stated: "Judge, I have been in a trial -- two trials, actually. I started the first case October 15th. That case completed, I believe it was end of October. Then I had one week off and I'm currently engaged in a homicide case in Judge Northway's court. The testimony just started December 3rd. I've been working very hard on that case. It's a double homicide case. I'm not ready to proceed today with the restitution hearing. The reason is I have not prepared. I've not had sufficient time to prepare. [¶] It was my understanding when Ms. Wu entered the plea in this case that there would be a restitution hearing prior to sentencing. I'm not prepared to proceed with the restitution hearing due to the complexity of the case and numerous financial transactions that occurred. [¶] For this reason, I'm requesting a date in January when I can be adequately prepared, sometime after the 14th of January."

In response, the prosecutor stated: "The People do object to -- yet again, to any request for continuance. As the Court is well aware, we have been trying to have this case moved through our system for a very long time now. [¶] I actually had my staff run the CJIC calendar dates, if you will, of how long this case -- to see how long this case has been on the Master Trial Calendar. We've been on the Master Trial Calendar since October of 2009. [¶] And, again, as the Court is well aware, [defense counsel] and I have had substantial discussions and numerous discussions to try and reach . . . resolution of restitution. There have been many discussions between myself and [defense counsel] about having the defendant at least show a good faith effort and start to accumulate some funds for restitution. That's been going on for several years now, and the only amount of restitution that's ever been recovered for the victim, Winnie Liu, in this case, is the $95,000 that was paid to the Court for purposes of restitution, I believe, back in 2008."

5

Defense counsel responded, "As I've already indicated, I'm not ready to proceed with the restitution hearing today. And the Court can do whatever Your Honor wishes, but I would still like to have this matter come back at a later date for restitution hearing."

The trial court denied the request to continue sentencing and explained, "This plea was entered after many, many months of discussions, and trying to work on and evaluate claims of restitution and past payments and various things, and the plea was entered in June, so I think it's time for sentencing." However, the trial court agreed to continue the restitution hearing.

When the trial court asked whether there was any legal cause why sentence should not be imposed, defendant counsel stated, "Only the legal cause that I've indicated, which is that when the plea was taken, it was my understanding, and I think Ms. Wu's understanding too, that restitution hearing would proceed at the sentencing hearing." Defendant was then sentenced to five years and eight months in county jail.

### 2. Analysis

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.]'" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)

Due process principles require that the negotiations of a plea agreement and "the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello v. New York* (1971) 404 U.S. 257, 262.)

6

Here, the terms of the plea agreement were: defendant would plead to two counts of grand theft and admit the allegations that the amount exceeded $200,000 (§ 12022.6, subd. (a)), and that probation would not be granted if the amount exceeded $100,000 (§ 1203.045); a restitution hearing would be held at a later date followed by a sentencing hearing; and in the event that the amount of restitution was less than the amounts specified in the allegations, the prosecutor would not object to the trial court striking the allegations for sentencing purposes. In our view, though the restitution hearing was held after the sentencing hearing, defendant was not deprived of due process. Defendant was induced to admit the allegations in exchange for the prosecutor's promises that defendant's sentence would not be enhanced by two years if the amount taken did not exceed $200,000, and that defendant would be eligible for probation if the amount taken did not exceed $100,000. A restitution hearing was held and the trial court determined that defendant took $355,000 from the victim. Defendant does not challenge the trial court's finding regarding the amount of restitution. Moreover, if the trial court had found that the amount taken from the victim was less than $200,000 or $100,000, it could have recalled the sentence on its own motion within 120 days. (Former § 1170, subd. (d).) Thus, the timing of the restitution hearing was not a material factor in inducing defendant to admit the allegations pursuant to sections 12022.6, subdivision (a) and 1203.045. Accordingly, we reject defendant's contention.

### B. No-Contact Order

Defendant next contends, and the Attorney General concedes, that the no-contact order must be stricken because it was not authorized by any statute. We agree.

At the sentencing hearing, the trial court stated: "You're not to have any contact with the victim in this matter, and that means no direct or indirect contact, so that means no face-to-face conversation, no letters, no telephone calls. You cannot have someone contact the victim on your behalf. You cannot text or use any kind of electronic means of

7

communication. I'm not going to try and list them all because there are too many and they keep changing, but any kind of communication with the victim that you can conceive of is prohibited." Defendant did not object.

A defendant's claim that a no-contact order is unauthorized by may be made for the first time on appeal. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 995 (*Robertson*).) "'Although the cases are varied, a sentence is generally "unauthorized" where it could not lawfully be imposed under any circumstance in the particular case.'" (*Id.* at pp. 995-996, quoting *People v. Scott* (1994) 9 Cal.4th 331, 354.)

Various statutes authorize the issuance of no-contact orders, but none of these statutes applies in the present case. Pursuant to former section 136.2, subdivision (a), a court could have issued a protective order "'upon a good cause belief that harm to, or intimidation of a victim or witness has occurred or is reasonably likely to occur.' Orders made under that statute, however, are 'operative only during the pendency of criminal proceedings and as prejudgment orders.' [Citations.]" (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1325.) Thus, here, section 136.2 did not provide authority for a no-contact order after judgment was entered. Section 1203.1, subdivision (j) authorizes no-contact orders in grand theft cases when the defendant is placed on probation. (*People v. Petty* (2013) 213 Cal.App.4th 1410, 1423-1424.) Here, however, defendant was sentenced to five years and eight months in county jail. Section 1201.3, subdivision (a) authorizes issuance of a no-contact order for a period of up to 10 years when the defendant is convicted of a sexual offense involving a minor. (*Robertson*, *supra*, 208 Cal.App.4th at p. 996.) Defendant was not convicted of a sexual offense. Sections 1203.097, subdivision (a)(2) and former 273.5, subdivision (i) authorized trial courts to issue no-contact orders only in domestic violence cases. Here, defendant was not convicted of domestic violence. Section 1202.05 "authorizes courts to prohibit visitation between a defendant sentenced to state prison and the child victim" of certain enumerated offenses. (*People v. Gerber* (2011) 196 Cal.App.4th 368, 391.) No such offenses are

involved in the present case and the victim is not a child.  Since there was no statutory authority for the issuance of the no-contact order, it must be stricken.

## C.  Presentence Investigation Report Fee

Defendant also contends:  the trial court failed to follow the procedural safeguards of section 1203.1b to determine her ability to pay the fee for the presentence investigation report; and there was insufficient evidence to support a finding that she had the ability to pay this fee.

According to the probation report, defendant was born in 1964 in China.  She obtained a Ph.D. in electrical engineering from Stanford University in 1991.  In 1992, she founded her own company and received a salary of $200,000 to $500,000 per year.  In 1997, defendant was arrested and sentenced to prison.  After her release in 1998, she became a self-employed information technology consultant and earned approximately $100,000 per year.  Defendant indicated that she intended to continue working as an information technology consultant after serving her sentence in the present case.  The probation officer recommended, among other things, that the trial court impose various fines and fees, including a presentence investigation report fee not to exceed $400 under section 1203.1b.

At the sentencing hearing in December 2012, the trial court ordered defendant to pay:  a presentence investigation fee of $400; a restitution fine of $2,000 (§ 1202.4); a $10 fine with a $28.50 penalty assessment; a $60 court security fee; a $60 criminal conviction assessment; and a $129.75 criminal justice fee.  Payment of attorney's fee was waived.[6]  Defendant did not object to imposition of the presentence investigation report fee.

---

[6]  In April 2012, Berndt Brauer, defendant's retained counsel, brought a motion to withdraw as attorney of record, because defendant was unable to raise funds to pay (*continued*)

Section 1203.1b provides in relevant part: "(a) In any case in which a defendant is convicted of an offense and is the subject of any . . . presentence investigation and report, whether or not probation supervision is ordered by the court, . . . the probation officer, . . . taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of . . . conducting any presentence investigation and preparing any presentence report . . . . The probation officer . . . shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay." After determining the amount, the probation officer is required to inform the defendant that he or she has the right to contest the amount at a hearing, which includes the right to counsel. (*Ibid.*) Moreover, "[t]he defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver." (*Ibid.*) If the defendant does not waive the right to a hearing, "the probation officer shall refer the matter to the court for the scheduling of a hearing to determine the amount of payment and the manner in which the payments shall be made." (§ 1203.1b, subd. (b).)

Subdivision (e) of section 1203.1b provides: "The term 'ability to pay' means the overall capability of the defendant to reimburse the costs, or a portion of the costs, of conducting the presentence investigation, preparing the . . . presentence report, . . . and shall include, but shall not be limited to, the defendant's: [¶] (1) Present financial position. [¶] (2) Reasonably discernible future financial position. In no event shall the court consider a period of more than one year from the date of the hearing for purposes of determining reasonably discernible future financial position. [¶] (3) Likelihood that the defendant shall be able to obtain employment within the one-year period from the date of

---

counsel. The trial court denied the motion because the case was ready for trial, but appointed Brauer to continue to represent defendant.

10

the hearing. [¶] (4) Any other factor or factors that may bear upon the defendant's financial capability to reimburse the county for the costs."

We first consider the issue of forfeiture. In *People v. Povio* (2014) 227 Cal.App.4th 1424 (*Povio*), the defendant challenged the imposition of a probation supervision fee under section 1203.1b. (*Povio*, at p. 1429.) He argued that the trial court failed to determine his ability to pay the monthly fee and that there was no evidence to support an implied ability-to-pay finding. (*Ibid.*) As in the present case, the Attorney General relied on *People v. McCullough* (2013) 56 Cal.4th 589[7] and contended that the defendant's failure to object to the imposition of the fee forfeited the issue. (*Povio*, at p. 1429..) This court held that the issue had not been forfeited. (*Ibid.*)

*Povio* reasoned: "In *McCullough*, the California Supreme Court held that a defendant who fails to challenge the sufficiency of the evidence of his ability to pay a booking fee at the time it is imposed forfeits his or her right to challenge the fee on appeal. [Citation.] . . . [¶] In reaching its conclusion as to booking fees, the *McCullough* court distinguished the booking fee statute before it from other fee statutes, including the statute governing the imposition of probation supervision fees, Penal Code section 1203.1b. [Citation.] The *McCullough* court noted that, in contrast to the booking fees statute, these statutes 'provide procedural requirements or guidelines for the ability-to-pay determination.' [Citation.] *McCullough* concluded that the lack of any procedural safeguards or guidelines for the imposition of a booking fee indicated 'that the Legislature considers the financial burden of the booking fee to be de minimis,' making 'the rationale for forfeiture . . . particularly strong.' [Citation.] [¶] As the *McCullough*

---

[7]     The California Supreme Court is currently considering whether the failure to object to an order for payment of probation supervision fees under section 1203.1b forfeits the contention that the trial court erred when it failed to make a finding of the defendant's ability to pay the fees. (*People v. Aguilar* (2013) 219 Cal.App.4th 1094, review granted Nov. 26, 2013, S213571; *People v. Trujillo*, review granted Nov. 26, 2013, S213687 [nonpub. opn.].)

11

court acknowledged, Penal Code section 1203.1b *does* impose guidelines that must be followed before the trial court may impose a probation supervision fee. . . . Under the reasoning of *McCullough*, these procedural safeguards indicate that the Legislature *does not* consider the financial burden of the probation supervision fee to be de minimis and counsel *against* forfeiture. Accordingly, we conclude Povio's sufficiency of the evidence argument as to the probation supervision fee is not forfeited under *McCullough*." (*Povio*, *supra*, 227 Cal.App.4th at p. 1429.) This court remanded the matter for the trial court to determine, among other things, the defendant's ability to pay the probation supervision fee under section 1203.1b. (*Povio*, at p. 1429.) For the same reasons, we conclude that defendant has not forfeited her challenge to the sufficiency of the evidence in the present case.

The Attorney General argues that the record contains substantial evidence of defendant's ability to pay. She cites to defendant's annual income of approximately $100,000 after her release from prison in 1998. However, the record also establishes that the trial court did not consider the amount of defendant's restitution to the victim, because the restitution hearing was held two months after the fee was imposed. Given the substantial amount of restitution involved, the matter must be remanded for a determination of defendant's ability to pay the presentence investigation report fee.

### III.    Disposition

The judgment is reversed and remanded for a determination of defendant's ability to pay the presentence investigation report fee. We further direct the trial court to strike the no-contact order.

12

_____

Mihara, J.

WE CONCUR:

_____

Premo, Acting P. J.

_____

Elia, J.